UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RIZWANA BEGUM YOUNUS**, <br><br> Plaintiff, <br><br> v. <br><br> **MATTHEW PALMER**, *et al.* <br><br> Defendants. | Civil Action No. 24-cv-2333 |

**MEMORANDUM OPINION**

Rizwana Younus filed a petition for a writ of mandamus against the U.S. Customs and Immigration Services ("USCIS") to compel agency action on her husband's I-130 visa application. Defendants move to dismiss, arguing that Petitioner failed to state a claim. ECF No. 5 ("MTD"). For the reasons below, the court will GRANT Defendants' Motion.

**I.      BACKGROUND**

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, permits immigrant visas for relatives of U.S. citizens. A citizen seeking permanent resident status for a spouse may complete Form I-130, Petition for Alien Relative, with USCIS. 8 U.S.C. §§ 1154, 1151(b)(2)(A)(i) (defining a spouse as an "immediate relative[ ]" of a citizen for Form I-130 petitioners); 8 C.F.R. § 204.1(a)(1). If USCIS approves the petition, the case is forwarded to the National Visa Center ("NVC") for processing. 8 C.F.R. § 204.2(a)(3).

The foreign spouse must then submit paperwork and processing fees to NVC. *See* 22 C.F.R. § 42.67 (outlining application fees and additional required documentation). Once the application is complete, NVC schedules a consular interview for the applicant at the embassy with

jurisdiction over the applicant's residence. *Id.* § 42.62. The consular officer must either issue or refuse the visa following the interview. *Id.* § 42.81(a).

> A visa refusal
>
> means the consular officer determined that the applicant was not eligible for a visa after completing and executing the visa application and any required interview. It is possible that a consular officer will reconsider a visa application refused . . . at a later date, based on additional information or upon the resolution of administrative processing, and determine that the applicant is eligible. When a consular officer refuses a case . . . , she or he will convey to the applicant whether the applicant is required to provide any further documentation or information, or whether the case requires additional administrative processing.

"Administrative Processing Information," U.S. Dep't of State, https://perma.cc/XHN8-SS9D.

If the consular officer refuses the application and places it into administrative processing, "[t]he duration of the administrative processing will vary based on the individual circumstances of each case." *Id.*

Petitioner filed an I-130 visa application on behalf of her husband, Sayd Akbar Khan, who resides in the United Kingdom, in April 2022. Mandamus Pet. ¶ 2, ECF No. 1 ("Pet."). USCIS initially approved the application in June 2023. *Id.* ¶ 18. After Khan's December 2023 interview at the U.S. Embassy, his application was refused and placed into "administrative processing." *Id.* ¶¶ 20–21; Joint Status Rep. ¶ 1, ECF No. 8.

In June 2024, in response to an email inquiring about his application status, the Embassy informed Khan that his "application is subject to additional administrative processing, which is mandatory and cannot be waived." Pet. ¶ 25. The visa application remains refused. *See* "Visa Status Check," U.S. Dep't of State Consular Electronic Application Center, https://ceac.state.gov/ceacstattracker/status.aspx (showing petitioner's visa application number (LND2023668002) as "refused"); Joint Status Rep. ¶ 5.

Petitioner challenges the delay in action on her husband's application under the Administrative Procedure Act ("APA"), the Mandamus Act, and the Fifth Amendment's Due Process Clause. Pet. ¶¶ 27–43. She seeks an order directing authorities to process Khan's visa application "within fifteen (15) calendar days" of its forthcoming order. *Id.* ¶ 44(c).

## II.     LEGAL STANDARD

Under Rule 12(b)(1), a plaintiff must establish jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

## III.    ANALYSIS

Defendants argue (1) that Petitioner's claims fail because there is no discrete agency action that a consular officer was required to, but did not, take, and (2) that Petitioner's claims are barred by the consular nonreviewability doctrine. *See* MTD at 4–12. Petitioner responds that the government has an obligation under the INA, 8 U.S.C. § 1202(b), the APA, and the Due Process Clause to review her visa application in a "reasonable time." 5 U.S.C. § 555(b). Pet.'s Opp'n at 12–16, ECF No. 6 ("Opp'n"). She further argues that the consular nonreviewability doctrine does not apply because "there has been no legitimate decision precluding judicial review." *Id.* at 17.

Because Petitioner does not allege "that an agency failed to take a discrete agency action that it is required to take," Defendants' Motion to Dismiss will be granted. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted). Accordingly, the court need not reach Defendants' consular nonreviewability argument.

### A. Agency Duty

A party seeking mandamus relief must show that an agency must have violated "a crystal-clear legal duty." *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (quoting *In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022)). Similarly, to make a Section 706 claim under the APA, Petitioner must "identify a legally required, discrete act that the [agency] has failed to perform[.]" *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009) (discussing this "threshold requirement for a [Section] 706 failure-to-act claim"). Although Petitioner points to Section 1202(b) under the INA, Section 555(b) under the APA, and the Fifth Amendment, none establish a duty for Defendants. Pet. ¶¶ 35, 36, 39–43.

First, Section 1202(b) describes the documentation a visa applicant must provide and to whom it must be provided. The section concludes: "All immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). But it does not require a specific action by the State Department. "Read in context, this sentence cabins the State Department's discretion as to *who* may review and adjudicate immigrant visa applications; it does not mandate that all applications actually be adjudicated." *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 15 (D.D.C. 2022) (emphasis in original). Indeed, at least three other judges on this court have concluded that Section 1202(b) does not impose a discrete duty when a party challenges a delay in adjudicating a visa application. *See, e.g.*, *Khamrabaeva v. Blinken*, No. 22-cv-1219, 2022 WL 4446387, at *5 (D.D.C. Sept. 24, 2022); *Pushkar v. Blinken*, No. 21-cv-2297, 2021 WL 4318116 at *10 (D.D.C. Sept. 23, 2021); *Zarei v. Blinken*, No. 21-cv-02102, 2021 WL 9146060 at *1 (D.D.C. Sept. 30, 2021). This court joins them.

Second, D.C. Circuit precedent forecloses Petitioner's APA claim under Section 555(b). In *Karimova v. Abate*, as here, the plaintiff had been interviewed for a visa, but her application had been "refused" and "placed . . . in administrative processing." No. 23-5178, 2024 WL 3517852,

at *2 (D.C. Cir. July 24, 2024) (internal quotation marks omitted).  The plaintiff likewise claimed that the subsequent delay was unlawful and "asked the court to 'compel' the consular officer to perform her duty to finally adjudicate her visa." *Id.*  The Circuit refused to grant that relief because the plaintiff had "not identified any law 'plainly prescrib[ing]' that the consular officer not put an officially refused visa application in administrative processing." *Id.* at *3 (quoting *Interstate Com. Comm'n. v. New York, N.H. & H.R. Co.*, 287 U.S. 178, 204 (1932)).

In so holding, the Circuit specifically rejected the plaintiff's reliance on APA Section 555(b).  5 U.S.C. § 555(b) ("[E]ach agency shall proceed to conclude a matter presented to it" "with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time.").  The Circuit reasoned that the plaintiff's "'matter' ha[d] already been 'conclude[d]'" when the consular officer refused her application. *Karimova*, 2024 WL 3517852, at *4.  Thus, "Section 555(b) *at most* could have entitled her to the official refusal decision she already received" and "does not in any way dictate how the agency can handle her rejected paperwork after" refusal.  *Id.* (emphasis in original).

Petitioner's Due Process claim fares no better, whether styled as a substantive or procedural due process claim.  "A noncitizen does not have a right to a visa, or 'a constitutionally-protected interest in the procedures by which such visas are obtained.'" *Khan v. Bitter*, No. 23-cv-1576, 2024 WL 756643, at *8 (D.D.C. Feb. 23, 2024) (first citing *see Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972); then quoting *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C. 2011)).  Likewise, the Supreme Court

> long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause . . . . He therefore has no entitlement to procedural rights other than those afforded by statute.

*Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020); *see also Farooqui v. U.S. Dep't of State*, No. 23-cv-1081, 2024 WL 1178468, at *7 (D.D.C. March 19, 2024) (rejecting the argument that the Due Process Clause creates a duty for the State Department to process a visa); *Armah v. U.S. Dep't of State*, No. 22-cv-1714, 2024 WL 2721634, at *10–11 (D.D.C. May 28, 2024) (same); *Khan*, 2024 WL 756643, at *9 (same); *Akrayi v. U.S. Dep't of State*, No. 22-cv-1289, 2023 WL 2424600, at *6 (D.D.C. March 9, 2023) (same).

Petitioner identifies no other legal duty. Opp'n at 12–16. And both parties agree that the court need not analyze Defendants' delay under *Telecomms. Rsch. & Action Ctr.* ("*TRAC*") *v. Fed. Comm. Comm'n*, 750 F.2d 70 (D.C. Cir. 1984). MTD at 6; Opp'n at 6.[1]

A. **Consular Nonreviewability**

Defendants also contend that the consular nonreviewability doctrine renders Petitioner's refused-yet-processing visa application immune from judicial review. MTD at 8–12. That doctrine "shields a consular official's decision to issue or withhold a visa from judicial review, at

---

[1] The balance of the *TRAC* factors weighs in favor of finding that Petitioner's delayed visa application is not unreasonable. *TRAC*, 750 F.2d at 80. The first and second *TRAC* factors tilt in Defendants' favor because Congress tends to give agencies "wide" discretion in their visa processing timelines. *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (finding that a two-year delay in processing a visa application is not unreasonable). And "no statutory or regulatory timeframe [exists] within which the State Department or a consular officer must re-adjudicate visa applications." *Isse v. Whitman*, No. 22-cv-3114, 2023 WL 4174357, at *7 (D.D.C. June 26, 2023). The fourth *TRAC* factor also leans in Defendants' favor because granting expedited agency action is considered inappropriate when that relief "would simply 'reorder' a queue of applicants seeking adjudication" and when no concomitant "'net gain' in such adjudications is achieved." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). The sixth *TRAC* factor does not favor either side because "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'" *TRAC*, 750 F.2d at 80 (quoting *Pub. Citizen Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 34 (D.C. Cir. 1984)). On the other hand, only the third and fifth *TRAC* factors weigh in Petitioner's favor, because prolonged separation from a spouse may be considered a risk to human health and welfare. *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020).

least unless Congress says otherwise." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). But courts in this district have rejected applying it where "administrative processing" remains ongoing, and a "final decision" is "yet to come." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 16 (D.D.C. 2022).

Similarly, this court need not decide the issue. "Dismissal based on consular nonreviewability . . . is a merits disposition under Federal Rule of Civil Procedure 12(b)(6)." *Baan Rao*, 985 F.3d at 1027. And because the court concludes that there are independent reasons to dismiss Petitioner's claims, *see supra* Section I.A, it need not decide whether consular nonreviewability applies, *see Almaqrami v. Pompeo*, 933 F.3d 774, 784 n.3 (D.C. Cir. 2019) ("[C]ourts may assume without deciding that a plaintiff's statutory claims are reviewable and proceed to the merits notwithstanding consular nonreviewability." (internal quotation marks omitted)).

## IV.   CONCLUSION

For the above reasons, the court GRANTS Defendants' Motion to Dismiss. A corresponding order shall follow shortly.

Date: August 1, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge